**SHADLER et al., Appellants,**

v.

**PURDY, Appellee.**

[Cite as *Shadler v. Purdy* (1989), 64 Ohio App.3d 98.]

Court of Appeals of Ohio,
Lucas County.

No. L–88–404.

Decided Sept. 15, 1989.

*Michael Lorton,* for appellants.

*Robert Clayton, Jr.* and *John Barron,* for appellee.

ABOOD, Judge.

This is an appeal from a decision of the Lucas County Court of Common Pleas granting defendant-appellee's motion for partial summary judgment as to the claims of plaintiff-appellant, Thomas Shadler, and dismissing *sua sponte* the claims of plaintiff-appellant, Linda Shadler. Appellants have filed a timely notice of appeal setting forth two assignments of error:

"I. The trial court erred in granting summary judgment to Defendant–Appellee as to the claims of Thomas Shadler since the determination of the date on which he discovered that he had been injured by malrpactice [*sic*] or the date on which he discovered the seriousness of his condition and was put on notice of need for further inquiry are issues of fact for the jury and where genuine issues of fact are presented on these questions, a trial court may not properly grant summary judgment.

"II. The trial court erred in granting Defendant–Appellee sumary [*sic*] judgment as to the claims of Linda Shadler for medical expenses and loss of consortium since those claims are governed by the four-year statute of limitations set forth in R.C. 2305.09(D) and were timely filed."

The facts giving rise to this appeal, as ascertained from the pleadings, the affidavit of appellee and the depositions of appellants are as follows. On December 12, 1983, appellant, Thomas Shadler, went to appellee for diagnosis and treatment of pain and swelling that he was experiencing at the base of the big toe of his right foot. During the office visit, appellee took x-rays of Shadler's foot and indicated that he had a chipped bone and a deteriorated joint. Appellee recommended surgery to implant an artificial joint to replace the deteriorated one. The surgery was performed on January 6, 1984, at Riverside Hospital. After the surgery, Shadler recuperated slowly, not re-

turning to work for approximately three months. In May 1984, Shadler again began experiencing increasing pain in his big toe and the bottom of his right foot. On October 15, 1984, he returned to appellee's office and was seen by Dr. Carroll, an associate of appellee. Dr. Carroll informed Shadler that he needed further surgery to his second toe because his big toe was shorter. This was Shadler's last contact with appellee's office. Later in October of that same year Shadler sought a second opinion from another podiatrist, Dr. Hendricks. Dr. Hendricks prescribed treatment consisting of shoe inserts and whirlpool therapy. After five months of this treatment with no improvement, Dr. Hendricks referred Shadler to Dr. Bowlus who Hendricks felt had more experience with implants. On April 9, 1985, Shadler consulted with Dr. Bowlus concerning his condition. Through his deposition testimony, appellant contends that Bowlus informed him that, based upon his age and occupation, he would not have used the implant that Dr. Purdy had inserted and that a bone chip remained in his foot. Bowlus recommended additional surgery to correct the problems.

On April 1, 1986, appellants sent their one-hundred-eighty-day letter to appellee notifying him of their intent to file suit for medical malpractice. On April 1, 1986, appellants filed their complaint against appellee, alleging that he was negligent in both the performance of the surgery on January 6, 1984, and the follow-up care. In addition, Mrs. Shadler asserted a claim for medical expenses and loss of consortium. On December 15, 1987, appellants voluntarily dismissed their complaint pursuant to Civ.R. 41(A) without prejudice and with the right to refile within one year. On December 21, 1987, appellants refiled their complaint. On April 21, 1988, appellee filed a motion for partial summary judgment as to Mr. Shadler's claims asserting that they were not timely filed under the applicable one-year statute of limitations.

In support of his motion, appellee argued that the pleadings, affidavit and depositions establish that Shadler was aware, or should have been aware, of the seriousness of his condition and that it was related to the operation performed by Dr. Purdy as early as May 1984, due to the increased pain that he experienced in his foot. Appellee also argued that the circumstances, as they existed in May 1984, would have put a reasonable person on notice of the need for further inquiry, citing *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204. Appellee submitted that appellant's cause of action accrued in May 1984, or at the latest October 15, 1984, when Shadler terminated his relationship with Dr. Purdy, but since the one-hundred-eighty-day letter was not sent until April 1, 1986, Shadler's claims are barred by the one-year statute of limitations.

On May 9, 1988, appellant Shadler filed his memorandum in opposition to appellee's motion for partial summary judgment, arguing that when he began experiencing increased pain in his foot he did not suspect he had been injured as a result of the surgery and it was only after his consultation with Dr. Bowlus on April 9, 1985, that he became aware of the seriousness of his condition and that it resulted from the surgery. Shadler submitted that his cause of action for malpractice accrued on April 9, 1985, or that at the very least, genuine issues of material fact exist as to when the statute of limitations commenced to run.

On June 3, 1988, appellee filed his reply and on December 5, 1988, the trial court filed its opinion and judgment entry. In its opinion, the trial court found that Shadler was or should have been aware of his condition and its causal connection to the surgery in May 1984 and that the pain would put a reasonable person on notice to ask about it. The trial court also found that Mrs. Shadler's claims were contingent upon those of Mr. Shadler and therefore were also time-barred. The court granted appellee's motion for partial summary judgment, dismissed Mr. Shadler's claims and *sua sponte* dismissed Mrs. Shadler's claims.

It is from this decision that appellants have brought this appeal.

█ In their first assignment of error, appellants argue that the trial court erred in granting summary judgment to appellee since a genuine issue of material fact was raised as to when Mr. Shadler became aware of the extent and seriousness of his condition and when he was put on notice of the need for further inquiry as to its cause. In response, appellee asserts that under the facts of this case Shadler's cause of action accrued in May 1984 and, therefore, the trial court properly granted his motion for partial summary judgment.

R.C. 2305.11, effective March 15, 1982,[1] set forth the applicable statute of limitations for a malpractice action against a podiatrist:

"(A) An action for * * * malpractice against a physician, podiatrist, hospital, or dentist, * * * shall be brought within one year after the cause thereof accrued * * *.

"If a written notice, prior to the expiration of time contained in this division, is given to any person in a medical claim that an individual is presently considering bringing an action against that person relating to professional services provided to that individual, then an action by that individual against that person may be commenced at any time within one hundred eighty days after that notice is given." 139 Ohio Laws, Part I, 2153.

---

**1.** This version of R.C. 2305.11 sets forth the applicable statute of limitations in effect at all times pertinent to this action.

In *Oliver v. Kaiser Community Health Found.* (1983), 5 Ohio St.3d 111, 5 OBR 247, 449 N.E.2d 438, the Supreme Court of Ohio adopted the "discovery rule" for determining when the statute of limitations begins to run in medical malpractice actions pursuant to R.C. 2305.11(A):

"Under R.C. 2305.11(A), a cause of action for medical malpractice accrues and the statute of limitations commences to run when the patient discovers, or, in the exercise of reasonable care and diligence should have discovered the resulting injury. * * * " *Id.* at syllabus.

In *Hershberger v. Akron City Hosp., supra,* the Supreme Court of Ohio set forth a three-prong test for determining the date of the "resulting injury" for the purpose of ascertaining when a cause of action for medical malpractice accrues:

" * * * [T]he trial court must look to the facts of the particular case and make the following determinations: when the injured party became aware, or should have become aware, of the extent and seriousness of his condition, which, of course, may occur without the necessity of further medical consultation; whether the injured party was aware, or should have been aware, that such condition was related to a specific professional medical service previously rendered him; and whether such condition would put a reasonable person on notice of need for further inquiry as to the cause of such condition." *Id.,* 34 Ohio St.3d at 5–6, 516 N.E.2d at 208.

Recently, in *Allenius v. Thomas* (1989), 42 Ohio St.3d 131, 133, 538 N.E.2d 93, 95, the Supreme Court of Ohio, in an attempt to clarify the *Hershberger* test, specifically the meaning of "extent and seriousness of his condition," held:

"Admittedly, 'extent and seriousness' are not terms of art and, therefore, do not lend themselves to easily discernible definitions. Since the three prongs of *Hershberger* overlap considerably, we believe that the best manner in which to explain 'extent and seriousness of his condition' is to combine the three prongs. Thus, we now hold that the 'extent and seriousness of his condition' language of the test set forth in *Hershberger v. Akron City Hosp.* (1987), 34 Ohio St.3d 1, 516 N.E.2d 204, paragraph one of the syllabus, requires that there be an occurrence of a 'cognizable event' which does or should lead the patient to believe that the condition of which the patient complains is related to a medical procedure, treatment or diagnosis previously rendered to the patient and where the cognizable event does or should place the patient on notice of the need to pursue his possible remedies." *Id.* at 133, 538 N.E.2d at 96.

In support of their respective positions, both parties have cited numerous cases with various fact patterns in which Ohio courts have applied the

*Hershberger* test to determine when the cause of action accrued and the applicable statute of limitations began to run. The one clear theme that is present in all of these and other such cases is that the determination of when the cause of action accrued and the statute of limitations began to run is subject to a factual analysis on a case by case basis.

Civ.R. 56(C) provides in pertinent part:

" * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * *[S]ummary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.* * * * "

When applying the test as set forth in *Hershberger, supra,* as further clarified by *Allenius, supra,* to the facts set forth above and construing these facts most strongly in favor of appellant, this court cannot find that reasonable minds could only conclude that the cognizable event which did or should have put Shadler on notice of the need to pursue his possible remedies took place in May 1984. Accordingly, we find that the trial court erred in granting appellee's motion for partial summary judgment, and appellants' first assignment of error is found well-taken.

In their second assignment of error, appellants assert that the trial court erred in dismissing Mrs. Shadler's claims for loss of consortium and medical expenses as time barred under the one-year statute of limitations. Appellants submit that Mrs. Shadler's claim were governed by the four-year statute of limitations set forth in R.C. 2305.09(D) and, therefore, even if appellants' claims accrued as early as May 1984, Mrs. Shadler's claims would not be time-barred.

Appellee acknowledges that prior to the legislature's modification of R.C. 2305.11, effective October 20, 1987, which subjects all derivative claims to the same one-year statute of limitations as medical malpractice claims, such derivative claims were subject to the four-year statute of limitations provided for in R.C. 2305.09(D). Appellee, however, urges this court to exercise its inherent power to modify the common-law definitions of malpractice and medical claims to include derivative claims and thereby subject them to the one-year statute of limitations for malpractice claims under pre–1987 R.C. 2305.11 and affirm the trial court's decision dismissing Mrs. Shadler's claims.

R.C. 2305.11,[2] as amended effective October 20, 1987, now defines the term "medical claim" so as to include derivative claims for relief that arise from the medical care, diagnosis and treatment of a person, thereby subjecting those claims to the one-year statute of limitations contained therein. Prior to this amendment, derivative claims, including claims for loss of consortium arising from a medical malpractice suit, were not governed by the one-year statute of limitations of R.C. 2305.11, since that statute applied only to actions for medical malpractice as defined at common law, which definition did not include derivative claims. *Holzwart v. Wehman* (1982), 1 Ohio St.3d 26, 1 OBR 63, 437 N.E.2d 589. See, also, *Hershberger, supra.* Instead, such derivative claims were governed by the four-year statute of limitations set forth in R.C. 2305.09.[3]

Mrs. Shadler's derivative claims for medical expenses and loss of consortium arose prior to the effective date of amended R.C. 2305.11 and, therefore, as a matter of law, are governed by the four-year statute of limitations provided for in R.C. 2305.09. This court declines to modify the common-law definition of "malpractice" and "medical claim" as appellee suggests so as to require application of the one-year statute of limitations set forth in R.C. 2305.11 to Mrs. Shadler's claims. Accordingly we find that the trial court erred in dismissing Mrs. Shadler's claims as time barred and appellants' second assignment of error is well-taken.

On consideration whereof, the court finds substantial justice has not been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is reversed. This cause is remanded to said court for further proceedings not inconsistent with this opinion. Appellee to pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK, P.J., and CONNORS, J., concur.

---

**2.** R.C. 2305.11(C), effective October 20, 1987, provides in pertinent part:
   "(3) 'Medical claim' means any claim that is asserted in any civil action against a physician, podiatrist, or hospital, against any employee or agent of a physician, podiatrist, or hospital, or against a registered nurse or physical therapist, and that arises out of the medical diagnosis, care, or treatment of any person. 'Medical claim' includes derivative claims for relief that arise from the medical diagnosis, care, or treatment of a person."

**3.** R.C. 2305.09 provides, in pertinent part:
   "An action for any of the following causes shall be brought within four years after the cause thereof accrued:
   "* * *
   "(D) For an injury to the rights of the plaintiff not arising on contract nor enumerated in sections 2305.10 to 2305.12, inclusive, 2305.14 and 1304.29 of the Revised Code."